**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

Kathleen R. Dvergsten,

        Plaintiff,

—vs.—

Andrew & Williamson Fresh Produce Inc.,
a California Corporation,

        Defendant.

_____

Case No.: _____

**COMPLAINT FOR DAMAGES**

**JURY DEMAND**

COME NOW the Plaintiff, Kathleen R. Dvergsten, ("Plaintiff") by and through her attorneys of record, asserting claims against the Defendant, Andrew & Williamson Fresh Produce Inc., ("Defendant"), and states and alleges as follows:

## I. <u>PARTIES</u>

1. The Plaintiff is a resident of Farmington, Minnesota, and is a citizen of the State of Minnesota.

2. The Defendant is a corporation organized and existing under the laws of the State of California, with its principal place of business, on information and belief, in San Diego, California. The Defendant is, therefore, a foreign corporation and not a resident of the State of Minnesota. Further, the Defendant is authorized to do, and in fact does, business in the State of Minnesota.

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the Defendant has certain minimum contacts with the State of Minnesota such that the maintenance of the suit in this District does not offend traditional notions of fair play and substantial justice.

4.      Venue in the United States District Court for the District of Minnesota is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims and causes of action occurred in this judicial district, and because the Defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III.      GENERAL ALLEGATIONS

**The *Salmonella Poona Outbreak***

5.      The Centers for Disease Control and Prevention (CDC), multiple states, and the U.S. Food and Drug Administration (FDA) are investigating a multistate outbreak of *Salmonella* Poona infections linked to imported cucumbers grown and packed by Rancho Don Juanito in Mexico and distributed by Andrew & Williamson Fresh Produce.

6.      Public health investigators are using the PulseNet system to identify illnesses that may be part of this outbreak. CDC coordinates PulseNet, the national subtyping network of public health and food regulatory agency laboratories. DNA "fingerprinting" is performed on *Salmonella* bacteria isolated from ill people by using a technique called pulsed-field gel electrophoresis, or PFGE. PulseNet manages a national

database of these DNA "fingerprints" to identify possible outbreaks. Three DNA "fingerprints" (outbreak strains) are included in this investigation.

7.     As of September 3, 2015, 285 people infected with the outbreak strains of *Salmonella* Poona have been reported from 27 states. The number of ill people reported from each state is as follows: Alaska (8), Arizona (60), Arkansas (6), California (51), Colorado (14), Idaho (8), Illinois (5), Kansas (1), Louisiana (3), Minnesota (12), Missouri (7), Montana (11), Nebraska (2), Nevada (7), New Mexico (15), New York (4), North Dakota (1), Ohio (2), Oklahoma (5), Oregon (3), South Carolina (6), Texas (9), Utah (30), Virginia (1), Washington (9), Wisconsin (2), and Wyoming (3).

8.     Among people for whom information is available, illnesses started on dates ranging from July 3, 2015 to August 26, 2015. Ill people range in age from less than 1 year to 99, with a median age of 13. Fifty-four percent of ill people are children younger than 18 years. Fifty-seven percent of ill people are female. Among 160 people with available information, 53 (33%) report being hospitalized. One death has been reported from California.

9.     In Minnesota, 12 cases have been identified as part of the national outbreak. At least 10 cases were exposed to contaminated cucumbers at five Red Lobster locations.

10.     Red Lobster restaurants and other Minnesota companies received recalled cucumbers. Investigations to determine specific companies that received recalled cucumbers are still ongoing.

11.     Red Lobster pulled cucumbers from all of its restaurants on September 4 even though a large majority of cases nationally were not exposed at a Red Lobster

3

restaurant. The restaurant chain has been a vital partner in the Minnesota investigation and has played an important role in helping to solve the national outbreak. Confirmed cases in other states involved grocery stores, retailers and other restaurants.

12.    The 12 confirmed cases in Minnesota range in age from 8 to 79 and are from nine metro and greater Minnesota counties. Their illnesses began August 13, through August 25. Eighty percent of those who got sick were female. Six were hospitalized; all are recovering.

13.    Epidemiologic, laboratory, and traceback investigations have identified imported cucumbers from Mexico and distributed by Andrew & Williamson Fresh Produce as a likely source of the infections in this outbreak. The investigation is ongoing.

14.    On September 4, 2015, Andrew & Williamson Fresh Produce voluntarily recalled all cucumbers sold under the "Limited Edition" brand label during the period from August 1, 2015 through September 3, 2015 because they may be contaminated with *Salmonella*. The type of cucumber is often referred to as a "slicer" or "American" cucumber. It is dark green in color and typical length is 7 to 10 inches. In retail locations it is typically sold in a bulk display without any individual packaging or plastic wrapping. Limited Edition cucumbers were distributed in the states of Alaska, Arizona, Arkansas, California, Colorado, Florida, Idaho, Illinois, Kansas, Kentucky, Louisiana, Minnesota, Mississippi, Montana, Nevada, New Jersey, New Mexico, Oklahoma, Oregon, South Carolina, Texas, and Utah and reached customers through retail, food service companies, wholesalers, and brokers. Further distribution to other states may have occurred.

4

### *Salmonella*

15.     The term *Salmonella* refers to a group or family of bacteria that variously cause illness in humans.  The taxonomy and nomenclature of *Salmonella* have changed over the years and are still evolving.  Currently, the Centers for Disease Control and Prevention (CDC) recognizes two species, which are divided into seven subspecies.  These subspecies are divided into over 50 serogroups based on somatic (O) antigens present.  The most common *Salmonella* serogroups are A, B, C, D, E, F, and G.  Serogroups are further divided into over 2,500 serotypes.  *Salmonella* serotypes are typically identified through a series of tests of antigenic formulas listed in a document called the Kauffmann-White Scheme published by the World Health Organization Collaborating Centre for Reference and Research on *Salmonella*.

16.     *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals, including birds.  *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with animal feces or foods that have been handled by infected food service workers who have practiced poor personal hygiene.  Contaminated foods usually look and smell normal.  Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated.  Many raw foods of animal origin are frequently contaminated, but thorough cooking kills *Salmonella*.

### *Medical Complications of Salmonellosis*

17.     The term reactive arthritis refers to an inflammation of one or more joints, following an infection localized at another site distant from the affected joints.  The

predominant site of the infection is the gastrointestinal tract.  Several bacteria, including *Salmonella*, induce septic arthritis. The resulting joint pain and inflammation can resolve completely over time or permanent joint damage can occur.

18.     The reactive arthritis associated with Reiter's may develop after a person eats food that has been tainted with bacteria.  In a small number of persons, the joint inflammation is accompanied by conjunctivitis (inflammation of the eyes), and uveitis (painful urination).   This triad of symptoms is called Reiter's Syndrome. Reiter's syndrome, a form of reactive arthritis, is an uncommon but debilitating syndrome caused by gastrointestinal or genitourinary infections.   The most common gastrointestinal bacteria involved are *Salmonella*, *Campylobacter*, *Yersinia*, and *Shigella*.   A triad of arthritis, conjunctivitis, and urethritis characterizes Reiter's syndrome, although not all three symptoms occur in all affected individuals.

19.     *Salmonella* is also a cause of a condition called post infectious irritable bowel syndrome (IBS), which is a chronic disorder characterized by alternating bouts of constipation and diarrhea, both of which are generally accompanied by abdominal cramping and pain.  In one recent study, over one-third of IBS sufferers had had IBS for more than ten years, with their symptoms remaining fairly constant over time.   IBS sufferers typically experienced symptoms for an average of 8.1 days per month.

### *The Plaintiff's Illness*

20.     On August 11, 2015 Plaintiff dined at the Maplewood, Minnesota Red Lobster where she consumed a salad that contained Defendant's *Salmonella*-tainted cucumbers.

21.     The following day Plaintiff became ill and was seen by her family physician, which felt she had a virus of the "stomach flu."   She was treated conservatively and sent home with instructions to push fluids.

22.     Unfortunately, that evening into August 14th, Plaintiff's symptoms worsened.   Plaintiff began to suffer severe cramping, vomiting and near constant diarrhea.  911 was called and it was determined that Plaintiff needed prompt, emergency care.  Plaintiff was transported to Northfield Hospital.

23.     Plaintiff was hospitalized until August 20, 2015.  While hospitalized her symptoms of diarrhea, nausea, fever, muscle pain and weakness intensified.   She was treated with IV's for dehydration and multiple antibiotics to combat the *Salmonella*.   A stool culture was taken that eventually returned positive for the cucumber-related outbreak strain of *Salmonella* Poona that was confirmed by the Minnesota Department of Health.

24.     Plaintiff was transferred to the Farmington Trinity Care Center for rehabilitation on August 20 and she remained there until August 28, 2015 when she was finally able to return home where she continues to convalesce.

## IV.     CAUSES OF ACTION

### Strict Liability—Count I

25.     The Defendant was at all times relevant hereto the manufacturer and seller of the adulterated food product that is the subject of the action.

26.     The adulterated food product that the Defendant manufactured, distributed, and/or sold was, at the time it left the Defendant's control, defective and unreasonably

dangerous for its ordinary and expected use because it contained *Salmonella*, a deadly pathogen.

27.     The adulterated food product that the Defendant manufactured, distributed, and/or sold was delivered to the Plaintiff without any change in its defective condition. The adulterated food product that the Defendant manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by the Plaintiff.

28.     The Defendant owed a duty of care to the Plaintiff to design, manufacture, and/or sell food that was not adulterated, which was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health.  The Defendant breached this duty.

29.     The Defendant owned a duty of care to the Plaintiff to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer.  The Defendant breached this duty.

30.     Plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the Defendant manufactured, distributed, and/or sold.

### Breach of Warranty—Count II

31.     The Defendant is liable to the Plaintiff for breaching express and implied warranties that it made regarding the adulterated food product that the Plaintiff purchased.  These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use.  Specifically, Defendant expressly warranted, through its sale of food to the public and by the statements and conduct of its

employees and agents, that the food it prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

32.     Plaintiff alleges that the *Salmonella*-contaminated food that the Defendant sold to them would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

33.     Plaintiff alleges that the *Salmonella*-contaminated food that the Defendant sold to them was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

34.     As a direct and proximate cause of the Defendant's breach of warranties, as set forth above, the Plaintiff sustained injuries and damages in an amount to be determined at trial.

## Negligence—Count III

35.     The Defendant owed to the Plaintiff a duty to use reasonable care in the manufacture, distribution, and sale of its food product, the breach of which duty would have prevented or eliminated the risk that the Defendant's food products would become contaminated with *Salmonella* or any other dangerous pathogen.   The Defendant breached this duty.

36.     The Defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent.  The Plaintiff is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or

provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

37.     The Defendant had a duty to properly supervise, train, and monitor its respective employees, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so, and was therefore negligent.

38.     The Defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances and regulations, and that were clean, free from adulteration, and safe for human consumption, but it failed to do so, and was therefore negligent.

39.     As a direct and proximate result of the Defendant's acts of negligence, the Plaintiff sustained injuries and damages in an amount to be determined at trial.

### Negligence Per Se—Count IV

40.     The Defendant had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of its food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq.*), and the Minnesota Food Law (Minn. Stat. § 31.01 *et seq.*)

41.     The Defendant failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, distribution, and sale of food adulterated with *Salmonella*, a deadly pathogen.

42.     As a direct and proximate result of conduct by the Defendant that was negligent *per se*, the Plaintiff sustained injury and damages in an amount to be determined at trial.

## V.     DAMAGES

43.     The Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the Defendant, in an amount that shall be fully proven at the time of trial.  These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendant as follows:

A.     Ordering compensation for all general, special, incidental, and consequential damages suffered by the Plaintiff as a result of the Defendant's conduct;

B.     Ordering statutory prejudgment interest;

C.     Awarding Plaintiff reasonable attorneys' fees and costs, to the fullest extent allowed by law; and

D.     Granting all such additional and/or further relief as this Court deems just and equitable.

Dated:  9/7/15

JARDINE, LOGAN & O'BRIEN, P.L.L.P.


By: s/ Joseph E. Flynn
   JOSEPH E. FLYNN (A.R.#165712)
   VICKI A. HRUBY (A.R.#0391163)
8519 Eagle Point Boulevard
Lake Elmo, MN 55042-8624
Phone: (651) 290-6500
Fax: (651) 223-5070
E-Mail: JFlynn@jlolaw.com
E-Mail: vhruby@jlolaw.com

AND

MARLER CLARK, LLP, PS
William D. Marler, Esq., WSBA # 17233
Attorneys for Plaintiffs
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Telephone: 206-346-1888

(admission pro hac vice pending)

ATTORNEYS FOR PLAINTIFF
KATHLEEN R. DVERGSTEN